Case No. 25-6067, et al. J.G.G. et al. v. Donald J. Trump in his official capacity as President of the United States, et al. Mr. Ensign for the Appellants, Mr. Gallant for the Appellees. Mr. Ensign, good afternoon. Good afternoon. May it please the Court, Drew Ensign, Deputy Assistant Attorney General for the United States. The District Court's order represents an unprecedented and enormous intrusion upon the powers of the Executive Branch. It enjoins the President's exercise of his war and foreign affairs powers under the Alien Enemies Act and does so in a manner that purports to direct operations outside the United States borders and in a manner that could intrude upon sensitive diplomatic negotiations. The basis of that order was explicit second-guessing of the President's determinations that the statutory preconditions of the AEA were satisfied for a foreign terrorist organization, Trinidad and Tobago, or TDA, even though both the Supreme Court and this Court have explicitly held that such challenges are not within the power of the federal courts to hear. The District Court's order is therefore appealable, much as the TRO directing the President to redeploy a carrier group from the South China Sea to the Persian Gulf, or to hold... Hang on, hang on, hang on. I mean, one of the claims pressed here, which the Supreme Court has expressly said, and we have said courts can entertain, so put aside interpretive questions about whether there's an incursion or invasion, is whether these individuals qualify under the terms of the proclamation, whether they're members of Tenderagua. I assume, as below, the government does not dispute that that is something courts can adjudicate, correct? Your Honor, it's certainly something that courts have adjudicated in individual habeas claims. That's a separate thing, but courts can do that. Asserting a power to do that is not ordering ships to relocate in foreign waters, right? That is straight-up judicial process that's allowed by the Supreme Court and circuit precedent. I understand you have your argument about habeas, right? But that's a procedural point. Your points about him overstepping seem to be forgetting that there is this claim, and in fact, this morning, he's limited the TROs, the likelihood of success to that prong. And so we don't need to go any further than that, correct? No, I don't believe so, Your Honor. Because the government has taken appeals of the TRO, the district court didn't have jurisdiction to change the basis of the TRO. That was one of the bases all along. I disagree, Your Honor. The basis of that order was set forth on page 41 of the transcript from the Saturday hearing, and they were expressly limited to just those second-guessing of the president's determination that the statutory preconditions of the AEA had been satisfied. Okay, if we read the record differently, if we read it to include these claims, having been pressed from the beginning and including at the hearing, it's insane from their complaint that their clients, at least the ones that we have, the named plaintiffs and some of the other ones, are not members of Trans-Nevada and had no chance to demonstrate that when they were rushed onto airplanes and flown to El Salvador or at risk of being rushed onto airplanes and flown out of the country. And so if we read the record that way, then we don't have to get into these other questions, correct? No, I don't believe so, Your Honor. We don't have to? No, I'm wrong? I guess I would say several things, Your Honor. One is that the district court's order goes well beyond merely preserving the status quo. It purports, as the district court explained, to order the president to conduct operations outside U.S. borders in a particular way. He directed that the executive branch either turn planes around or to find another way to operate internationally. So, I mean, at this point, my understanding is that the government has been complying with the TRO, but obviously it doesn't extend to people who are being deported on grounds independent of the proclamation. So when I say complying, that there are no planes now en route out of the country with people covered by the TRO, correct? That's my understanding, yes. No planes on the ground anywhere in the world with people covered by the TRO that would have to come back. And, Your Honor, let me first clarify. That's actually right? I believe so, Your Honor, though let me clarify one thing about that, which is that the district court's order only applies to those that would be removed under the Alien Enemies Act. It does not apply to those that may separately have final orders under the INAC. I'm sorry I wasn't clear. I was trying to say that up front. There are other grounds for moving them out of the country. He was quite clear, it was clear again this morning, but it's been clear from the beginning that's never been enjoined under the temporary restraining orders. That's correct, Your Honor. Right, so we're not talking about those. You might have planes with people going other places because they've got ordinary orders of deportation. I think that's right, and I apologize, Your Honor, I think we're agreeing. No, no, I was clearly not being clear enough. Clearly not being clear. So now to clarify again, my question is the concern about ordering planes back and forth is moot at this point. That's over and done. There's nothing we could do to address that, nothing we could do to remedy that, even if we were to agree that that shouldn't have happened. That's a question, but it's just moot at this point. I don't believe so, Your Honor. I think the district court understands the government to be under a continuing obligation, having not turned the planes around to find some other way to return the people. I don't think the district court has interpreted its TRO as no longer being operative, and so I think that continuing aspect of it supports appellate jurisdiction here. You read it as requiring the return of people who are no longer in U.S. custody? Your Honor, the government does not believe that the oral pronouncements as opposed to the written one is binding, but as the district court appears to have a different view, he ordered his oral order provided for two ways of compliance, either turning around the planes or finding a way to return the people to the United States. The first option is no longer available, but the district court has not said that the second option is not still in force. Much of this, I think, has to do with the compliance issues that are, I think, separate and go forward regardless of what happens with TROs. And so, as of right now, your concern is that the TROs, and for your sake, the written TRO, the written version of the second TRO, is in place. What language in that requires the retrieval of people from U.S. custody? Let me clarify again. That are no longer in U.S. custody? Your Honor, it would not be the written order. I believe it's on page 43 of the Saturday transcript. It was an oral directive, but more broadly, too, this is a nationwide TRO that enjoins the president from using any of his AEA authority to remove people during this period. That is something. That's not ordering ships around in the water. That's not ordering planes to go anywhere. All of the TRO, the nationwide TRO says is folks that are detained and folks can still be detained under the AEA. They just cannot be removed from the country until this point, until you get a preliminary injunction decision from the court, which looks to be forthcoming soon. I agree that the district court looks like it may be acting on a preliminary injunction soon, but I think the intrusion upon the war powers and foreign policy powers of the president is utterly unprecedented and in a way. Well, this is an unprecedented action as well. So, of course, there's no precedent for it because no president has ever used this statute this way, which isn't to say one way or the other what it can be done, but simply to say we are in unprecedented territory. I'm just trying to really clarify here. If you agree that, and I believe you agree in district court, I think you agree here. Tell me if I'm mishearing that these folks have a right under the AEA, under precedent, to challenge their status as individuals subject to, that fall within the terms of the proclamation here. That is, I think most relevantly, whether they are members of TREN de Uruguay, although maybe they deny Venezuelan citizen status too. I don't know. But the big one that seems to be in the papers is they said we're not even members of this. In fact, some of us are fleeing from TREN de Uruguay. Is it your position that temporary restraining order that simply prevents removal until there's procedure and opportunity, notice, opportunity in place to address whether they even fall under the proclamation? Are you arguing that that is an unwarranted intrusion on the president's powers? Yes, Your Honor. I think whenever a district court enjoins the president from exercising his war and foreign policy powers on bases that are manifest error, that is absolutely a sort of irreparable harm. But the injunction doesn't have to be against the president. I mean, the president said, I only want people who are members of TREN de Uruguay removed. And so if it's lower level executive officials are removing people who are not, or who we don't know are members of TREN de Uruguay, the problem is not with the president's proclamation, it's with its implementation by lower level executive officials. And that's against him, the TRO runs. So there's nothing there about enjoining his war or national security powers. That is all about lower level folks who are not implementing the terms of the proclamation because they're not making sure these folks are members of the gang before they remove them. Your Honor, I disagree with that for at least two reasons. First of all, that's simply not the basis of the TRO that was appealed. Again, on page 41 of the Saturday transcript, you'll see the basis that the district court gave for its second TRO. And that basis was explicitly not on having anything to do with individualized determinations that people were members of TDA. It had to do with second guessing the president's determinations that there had been an invasion or predatory incursion or threatened or attempted of the same. Page 46, is that right? 41 of the Saturday hearing. That's March 21st, right? Yes, Your Honor. Let me get to that specific language. So what the district court said in explaining why it was issuing a TRO was, I think they, plaintiffs, have certainly presented a serious question that the president's proclamation is not legal under the AEA or... I just want to make sure I'm on the same page as you. I'm looking at the afternoon transcript. This would be the... I think I'm in the wrong transcript. That's my problem. I think the transcript has line numbers, so if you could tell us the line number you're starting with. I think I have it, but just so we're all on the same page. Yes, Your Honor. It's page 41, beginning at line 12. Sorry, that's my fault. I'm sorry. Let me pull that as well. So what the district court said was, I think they, plaintiffs, have certainly presented a serious question that the president's proclamation is not legal under the AEA, or a different way of saying it is that the AEA does not provide a basis for the president's proclamation, given that the terms invasion, predatory incursion, really relate to hostile acts perpetrated by enemy nations and commensurate to war. Also, the terms nation and government do not apply to non-state actors like criminal gangs. And then he goes on without ever referencing the opportunity to make challenges to individualized determinations under the AEA. So I think that's the order that you have before you. That's the order that we took an appeal of. And its basis is specifically the sort of second guessing of the adequacy of the president's determination that statutory preconditions of the AEA have been satisfied. And the Supreme Court's decision in Ludecky and this court's decision in Citizens Protected League specifically preclude such review. Here's how the Supreme Court described it in Ludecky. The very nature of the president's power to order the removal of all enemy aliens rejects the notion that courts may pass judgment upon the exercise of that discretion, end quote. Similarly, this court in Citizens Protected League recognized that, quote, unreviewable power in the president dot dot dot is the essence of the act, end quote. The binding holdings of Ludecky and Citizens Protected League are controlling precedent here. In both, plaintiffs challenged the president's determination that one of the statutory preconditions there, whether there was a war that could justify invoking the act, was satisfied. In both cases, plaintiffs had very strong factual arguments. World War II had long since ended as a practical matter and victory in Europe Day had been declared years earlier. As Justice Black noted in his dissent, the very idea that World War II was still ongoing at the time of Ludecky was, quote, pure fiction. None of that mattered, however. President Truman's determination that World War II had not ended simply was not reviewable. Federal courts therefore lacked jurisdiction to hear challenge to the president's findings that the requirements of the AEA had been met. The same result must obtain here. As in Ludecky and Citizens Protected League, plaintiffs are bringing facial challenges to the president's determination that the conditions for invoking the AEA have been satisfied. And there is no basis for concluding that the president's determination that there is a war is wholly unreviewable, but determinations that there has been an invasion or a predatory incursion or threatened or attempted of the same is somehow reviewable. So he also, what he said, and again, I apologize, but I think this is line 10 to 11 of 41, it's outside of what Ludecky talked about. It's outside of it. And we know what was outside of what Ludecky talked about, and that was the individual determinations as to their qualification, as to whether they qualify under the order. And again, there's no question that that can be done. That's been argued in this case from the beginning. It's in the complaint. It's been argued about. That's the basis on which the government keeps saying you have to do this through habeas. There's just no question that he was basing it on multiple things, and one of which, and we now have the clarification from the district court judge this morning, is that it's just about, all it has to rest on now in denying your motion to vacate is the right of them to have an opportunity, and there's no procedure as implemented by lower level officials that allows anybody an opportunity to challenge their status. I understand the language on both things here, but to the extent it's resting on that, and that's what we've been told this morning, and it's here as well. At least part of it here, and it's what's been clarified now. On that, there isn't an impermissible intrusion. It's fully consistent with our precedent in Clark and Ludecky, correct? No, Your Honor. I simply don't agree with that. I think he told us on page 41 explicitly what his reasoning was, and I think you're reading a lot into that additional language in a whole other holding that now exists in 37-page opinion form, but did not exist when the order was appealed and is not before you. One of the things he said today, I just want to see if there's common ground between you and the plaintiffs and the district court. He said, before they may be deported, they are entitled to individualized hearings to determine whether the act applies to them at all. I think you agree with that. Do you agree with that? I agree with part of that, Your Honor, in that he cites to a number of different cases that allow for such review in habeas proceedings, and so to the extent that someone were to bring a habeas challenge review of some sort along those lines is, you know. So let me just, I'll use your words and then make sure that we're on the same page. To the extent that it's brought in an individualized habeas challenge, they are entitled to individualized hearings to determine whether the act applies to them at all, correct? Your Honor, there's certainly precedent to support that. It's not precedent of the Supreme Court, so the exact contours of what a habeas court might hold are unclear, but I will certainly acknowledge there are cases that are habeas cases that exercise review, certainly of that sort. Ludecky itself exercised review over a due process challenge, and that was reviewable. It just simply had no merit whatsoever. This court itself, the Citizens Protective League, exercised similar review over constitutionality, but again, just thought there was no merit there. Well, let's say that – I understand you do not be – not to be affirmatively endorsing, but not to be affirmatively contesting the statement that if they bring it in an individualized habeas petition, they're entitled to individualized hearings to determine whether the act applies to them at all. In other words, they bring a habeas petition. They can say to a federal district judge, I am not Trende Aravo, and a federal district judge would review that at least to some degree. It sounds like you're not affirmatively endorsing that, but you're not arguing against it. If that is true, that they can do that, how would that work? My understanding is that in some ways it's already working. There are some individualized habeas hearings being held in Texas where the detainees are being held. Can you just help me understand? I think it's a friendly question. If they can bring a habeas petition to say, I'm not a member of TDA, so you couldn't remove me under the president's proclamation, how would they bring that habeas claim? What would that look like? Certainly, Your Honor. They can bring an individualized habeas claim, and at least some arguments are certainly available in habeas. Ludecky itself reviewed a due process argument in the habeas context, so certainly at least that is available. The precise contours of that would be resolved by those habeas courts, but to your question of how would this work is how it is working in Texas right now. Courts are deciding that. How it absolutely cannot work is how the district court— Under the proclamation, would they have access to a court to do that? They would certainly have access to a court to do so, and many have done so. And that's important, too, what you just said. Many have done so. These habeas hearings are ongoing now, individualized habeas hearings in Texas. That's correct, Your Honor. Were the people that were on the airplanes last weekend given an opportunity to file habeas? Well, Your Honor, we are here on a case in which the five individual plaintiffs were able to get in court and were able to get a TRO, and therefore were not on planes. But one or so was on planes and got removed. Of the five named plaintiffs, that's not my understanding, Your Honor. Of all five, the government has represented that those five were not placed on planes, that the five that had the benefit—the individual plaintiffs that had the benefit of the first TRO who were able to get in court in time— In this process that I'm describing, the five named plaintiffs here who did file in this court before they were removed from the country could have—you tell me if this is wrong—could have just as easily filed in a Texas district court a habeas petition in the district where they're being held. Absolutely, Your Honor. And notably, in the complaint that was filed in this case, they did raise a habeas claim. It was count nine of it. They didn't just raise it. It was the title of their complaint. The title of their complaint—I think I have it somewhere here—was class action complaint and petition to rid of habeas corpus. And they later said, plaintiffs respectfully pray this court to grant a writ of habeas corpus to plaintiffs that enjoins defendants from removing them under the Alien Enemy Act. And those are ongoing in Texas. Some of those are ongoing in Texas. Absolutely, Your Honor. Is the government detaining anyone solely on the basis of the Alien Enemy Act? Your Honor, I would have to check that specifically. Almost everyone is being detained additionally under Title VIII. So, I'm not sure if there are any specific AEA-only detentions. Certainly, but the challenge has been brought to that. I'd be curious to know if you can find out and if it wouldn't reveal something too sensitive to reveal. If there's anyone being detained solely on the basis of the Alien Enemy Act. Your Honor, we're certainly happy to track that down and provide that information to the court. And it seems like the relevant thing is where people being removed solely, not detained, but removed solely based on the proclamation. Again, you can clarify for me. I'm just looking at a cold record here. That proclamation was signed and people were getting put on planes immediately without even notice as to the basis, let alone an opportunity to file suit. And so, with those removals, I think there was one airplane that you said people removed on other grounds. But there were two where the government hasn't argued that. Am I recalling the record correctly? Your Honor, I believe so. Two planes where the people were removed under the AEA, not under the holding of removal process or removal of the ordinary INA removal. The Title VIII process. Yes, Your Honor. But I think the fact is that five individual plaintiffs were able to march into court, file habeas, actually get released, admittedly on non-habeas grounds. And the fact that that opportunity... I thought the government, I mean, that was a super fast order that was done, as you know. I mean, the government was called and notified. And then I hear in that afternoon, but that's one of the reasons there's all these separate disputes in district courts about compliance, because planes were already loaded and taken off. And those folks did not have notice or an opportunity to challenge their status at all. And that's why there's had to be a class certification to slow things down until we have an opportunity for due process. Your Honor, I think this court's decision, IM versus CBP, is instructive on this. Am I wrong about anything I just said, actually? Your Honor, I think it's incorrect that they couldn't have gotten into court as the five individual plaintiffs. No, but the point here was that there were plane loads of people. I mean, it's a class action. There were plane loads of people. There were no procedures in place to notify people. Nazis got better treatment under the Alien Enemy Act than has happened here, where the proclamation required the promulgation of regulations. And they had hearing boards before people were removed. And yet here, there's nothing in there about hearing boards. There's no regulations. And nothing was adopted by the agency officials that were administering this. People weren't given notice. They weren't told where they were going. And they were given – those people on those planes on that Saturday had no opportunity to file habeas or any type of action to challenge the removal of the AEA. And you've agreed that two of those airplanes, people were removed under the AEA. Is that – what's actually wrong about what I said? Well, Your Honor, we certainly dispute the Nazi analogy. But more importantly, the fact is that individual plaintiffs were able to file habeas in time in order to secure release. Wait, what individual plaintiffs were? The five individual plaintiffs that got – That's not my question. My question is there were a lot more people. They wanted to make a class action. They had to have some named plaintiffs. So five people filing habeas doesn't help everybody else on two airplane loads. Correct? And my question to you is – and you said those five didn't get put on the airplane. So as to the two airplanes that I think you just agreed involved removals solely on AEA grounds, on Saturday, in the very short time of the proclamation's publication, had no opportunity to file for habeas or even notice as to the grounds on which they were being removed. Am I wrong about that? I think so, Your Honor. The fact that five individual plaintiffs did file habeas and did get relief indicates that they could – I don't think you're answering my question. My question is not as to the five plaintiffs. How much time – I want you to think of five other people on the first airplane. How much time were they – when were they given notice that they were being removed under the AEA on the grounds that they were members of Trent-D'Arco? And how much time were they given between that notice and being put on the airplane that Saturday, right after the proclamation was signed, to file a suit? Your Honor, those facts are not in the record, and I don't know all of them offhand, but I think – Okay. Go ahead. I think the fact that five individuals were able to do so indicates that others could not. They filed suit before the proclamation was even published. I've asked you after the proclamation was published. And I assume these habeas actions that you're talking about – and correct me if I'm wrong – that are now being filed in Texas have been filed since there's been a say. Your Honor, I'm talking about the five individual plaintiffs in this case. That's not my question. I understand. My question here is, if someone thinks there was a meaningful opportunity, notice and opportunity to file for habeas for the people on those two airplanes. They're not these five airplanes. Because they filed before the proclamation was even published. If there was no opportunity for those folks to file habeas, then that's the issue for the TRO, to freeze things in place so that compliance with due process can occur. Your Honor, as to due process – You haven't disagreed with any of my facts about there wasn't time for the people on those two airplanes. You haven't asked me. Your Honor – One at a time, were they given notice before being put on the airplane that they were being removed because they were members of Teren de Aragua pursuant to the President's proclamation under the AEA? Your Honor, I don't think that is in the record. You don't have – you can't speak to the government with knowledge about that. Your Honor, my understanding on public news reports is that they had some sort of notice. I don't know the specific contours of that. But again, our position is that – So there's no record that they were given notice. And then how much time was there between the President's signing of the proclamation and the first of those two planes taking off? Your Honor, that's not in the record. I don't know that. But you had the times of those planes pretty clearly, and we know what time the President's proclamation was published. Your Honor, the record has what times that they had departed before the 725 p.m. That must be findable. What time the planes took off. Your Honor, that is currently – the government is currently engaged in evaluating what – if any of that can be disclosed. You can tell what time the planes landed, but you can't tell what time they took off? We have told what time that – their status as of when the 725 p.m. minute order issued. And I'm not authorized to tell any – to discuss any more operational details of that. Is the government aware of how long it takes to fly from wherever this airport is in Texas to El Salvador generally? Your Honor, I don't know that off the top of my head. That can be found out pretty easily. I mean, it just feels like there was no time. And the habeas cases you're talking about now were only able to be filed because the district court froze things. Well, Your Honor, this case itself was originally filed as a habeas action. Other habeas cases that you mentioned filed in Texas, when were they filed? Your Honor, at least – I believe at least one of them was filed before the plaintiffs indicated that they thought the plane had taken off. That I can track down, but that's my recollection. The other ones involving because there's a stay in place. What's that? Your Honor, I don't know the precise status of every single one of those individual habeas actions. They could have been filed before the President's proclamation was made public. And before someone was told that they were being subject to it.  Your Honor, again, I just – Because it wouldn't be a right claim. Your Honor, we're here because five individual plaintiffs filed a complaint that clearly included habeas claims, as Judge Walker indicated. And here we are hearing that very claim. And here's what this court said. Excuse me. In IM v. CPP, IM contends that a removed alien may file a habeas petition if extreme circumstances prevented him from filing one. He was in custody. We disagree. Lower courts are created by Congress and have only the jurisdiction Congress grants, no more, no less. And, you know, Your Honor indicated that you thought that this was a matter of due process. But I think that's very useful here because the Supreme Court and this court have confronted due process claims challenging the invocation of the AEA. And, you know, here's what Supreme Court said in Ludecky. It said, the act is almost as old as the Constitution, and it would savor of doctrinaire audacity now to find the statute offensive to some emanation of the Bill of Rights. Which obviously includes – No one's saying the whole statute's under – No one's saying the Alien Enemies Act is – Well, maybe they'll tell me they're saying that. The entire Alien Enemies Act is unconstitutional. That has been decided. The question is whether a particular proclamation and its implementation is constitutional. This happens all the time. The statutes are constitutional, but how they're implemented in a particular case is not. That's all we're talking about. And in Ludecky and in Clark, Clark was a case like this one. It wasn't a habeas – sorry. I used a shorter name for a case in this court. Clark. It was 159 people in an organization who represented their interests who filed suits. And we recognized there that you could have a challenge to whether you qualify under the proclamation. Right? The issue here is whether there's a process. I agree that that's how the district court saw it. But there were due process arguments raised in those cases as well. And this court said that if there was the slightest question in the minds of the authors of the Constitution or contemporaries concerning the constitutionality of the Alien Enemies Act, it would have appeared. None did. Yeah, that's the constitutionality of the act. You just finished the sentence for me. My question, and I think what district court here hasn't called into question the constitutionality of the Alien Enemies Act. It's been upheld as you said. It's a part of the war power. So that's not the question here. The question is whether the implementation of this proclamation without any process to determine whether people qualify under it. I mean, if the government says we don't have to give process for that. I mean, y'all could have put me up on Saturday and thrown me on a plane. Thinking I'm a member of Trent-Duragua and giving me no chance to protest it. And say somehow it's a violation of presidential war powers for me to say, excuse me, no, I'm not. I'd like a hearing. He wouldn't say that. Your Honor, obviously, nothing of the sort is presented by the record here. I think what we don't have any record on whether these individuals are members of Trent-Duragua or victims of Trent-Duragua. Your Honor, as you've characterized it, what that sounds like to me is an argument that the AEA is unconstitutional because it doesn't provide for. I'm going to say this, and I don't know how to say it any more clearly. My questions are about the implementation of a particular proclamation under the statute. That is not an argument. And quite frankly, the statute provides that there will be regulations issued. And regulations to determine someone's status have happened every other time the statute's been used. So this isn't about the statute being unconstitutional. It's whether implementation of it under this proclamation is unconstitutional. And not even is it unconstitutional. Is there a likelihood of showing that there's a constitutional problem here because of the lack of due process? We're not even deciding the merits. So please do not attribute to me that I'm saying the statute's unconstitutional. You and I agree that that has been answered. But implementation of a proclamation is a completely different question. Can we agree on that? You won't agree, I mean, maybe that it's a constitutional problem. But you agree that it's a separate question whether the implementation of something under a lawful statute is constitutional. Your Honor, certainly at that level of abstraction, I agree with you. I see that… Build down exactly what this case is. That's not abstract. Well, Your Honor, where I disagree is that, as Your Honor identified, the AEA requires the issuance of regulations. It does not require the provision of pre-deprivation process. And so I think that would be an argument that under the due process clause, the failure of the AEA itself to mandate pre-deprivation hearings is unconstitutional. And I think that is the sort of challenge that was considered and rejected. When were other usages of the AEA? And people were summarily removed without a due process. Can you show me an example in history when the AEA was used that way? Yes, Your Honor. So in Ludecky, for example, there was a requirement in the implementing regulations that an alien had to be dangerous before they would be removed. And part of the challenge was that that person was not dangerous. And wanted to challenge the Attorney General's determination that he was. And what the Supreme Court said is that he, President Truman, provided for the removal of such aliens as were deemed by the Attorney General to be dangerous. But such a finding, on the President's behalf, was likewise not to be subjected to the scrutiny of… Different question. All right. The order recited that the petitioner was deemed dangerous on the basis of evidence adduced in hearings before the alien enemy hearing board. That's what I'm talking about. They had a process there for the decision. The question whether a court can review a deemed… Whether a secretary properly deemed someone dangerous, that's what they said. That's committed to the discussion of the secretary, whether someone's deemed dangerous. But there was hearings and there was process. I asked you when they haven't had process. Your Honor, I guess then that points to me that this conversation has been very much about due process. But even as the 37-page opinion that issued this morning, it seems to sound in due process but doesn't hold, you know, make a holding based in due process. And so, that alone… Well, it says it limits… It's not holding because it's a TRO. It says it's limiting its likelihood of success analysis to that question. And then to get… If you want to respond to that, because I wanted to get to this question of whether it can only go through habeas, but I wanted to let you. Your Honor, so, you know, we think that the rationale has been swapped out at the last minute, less than four hours before oral argument. We think that's procedurally improper and potentially jurisdictionally problematic where the ordinary rules of jurisdiction do not permit district courts to present this court with a moving target on appellate review. And I think that's exactly what we have here. Another procedural problem here is that you never sought a stay from the district court. That's correct, Your Honor. This is obviously… And you've had plenty of time. You've had a week, more than a week. You've never sought a stay from the district court first, which our precedent requires. No, Your Honor. Certainly, that is a general thing. This case is absolutely extraordinary that we moved within mere hours for this court. It obviously was not possible to exhaust before the district court in that time. Your Honor, before the court… I don't mean you personally. The government was before the court Saturday afternoon in person when the TRO issued, right? There was a government attorney before the court Saturday afternoon when the operative TRO now was issued, correct? That's correct, Your Honor, although… The attorney has said when the TRO was entered, we request a stay so we can seek relief from the Court of Appeals. Did they have time to do that at that hearing? I suppose so, Your Honor, although… Seek a stay. Your Honor, a couple of things let me say about that. First of all, that TRO, it was scheduled a hearing for class certification. The government was surprised to discover and I was personally just surprised to discover that the TRO merits would be discussed. The hearing was only set for class certification. And on that question of class certification, the government was not permitted to file even a single sentence of written briefing in opposition before we were hauled into court on a Saturday at 5 p.m. and a nationwide class was certified. And then in that posture, we were then surprised to discover that notwithstanding the fact that the order… Sorry, that the notice was for a hearing on class certification, that in fact a second TRO would be… The merits of which would be considered, that was presented there. We certainly believe that it wasn't… I don't understand how that means you didn't have time that afternoon or Sunday or Monday or Tuesday or Wednesday or Thursday or Friday or Saturday or Sunday or this morning. Your Honor… That first day from the district court. You had time, correct? Your Honor, we… You had time, yes or no? We've had time. It's clear that we went to this court. Your Honor, certainly, too, this is not, I believe, an issue of the FRAP 8 compliance that plaintiffs have raised. So, by itself, it may have been forfeited because that is not an argument that I believe the plaintiffs raised. But before that, you know, we had already sought a first day. You admitted it right in your filings with us. You teed it up. They didn't have to raise it. You teed it up in your filings that we didn't do this. Do you know how often the government has asked this court to dismiss the applications because someone didn't first ask it before? Your Honor, I acknowledge that is a common course in cases. There is nothing remotely ordinary about this case and certainly not… What is very ordinary is that you had plenty of time to ask first day. I don't… You certainly didn't, but you did have the time to type into your briefs here. We didn't ask the district court first day. Your Honor, because we thought, frankly, candidly, we hoped this court might act more quickly. And we, therefore, wanted to get relief as soon as possible given the stakes of the issues presented. I guess we haven't thought with the stakes that you would want to cross your procedural T's and dot the I's. Your Honor, given the extraordinary importance of this case and the fact that it's presented… I mean, it seems to be all the more reason to ask the district court first day if it's important. I mean, is the government now of the view that we should adopt as a ruling in this court that when it's extraordinarily important, but there's still plenty of time, you don't have to ask it first or from an agency first? Your Honor, we disagree that there was plenty of time, and we went to this court… More than a week? Your Honor… One second. Your Honor, to the extent that this court believes that exhaustion is important, we're happy to do so before the district court. We expect that we would get an almost instantaneous denial. If that's something that is holding up relief in this case, that's something we're happy to do. I had a question about your argument that this has to be done, that this relief has to be sought through habeas corpus. Yes, Your Honor. There are a lot of cases from the Supreme Court and this court recognizing, and again, Clark is the chief one right under the Alien Enemies Act, that when someone is bringing a procedural challenge… …that you can have class actions that bring challenges to the procedures by which removals are being implemented. And that's not a habeas claim because it's a challenge to procedures. And married to that is that not one of these plaintiffs, or as best we can tell, people in the class, is asking to be released from custody. And the Supreme Court has said time and again that when you aren't being asked to release from custody, that they want to stay in the U.S. custody. No one's challenging the right of the government to detain them. But habeas is not the right vehicle. You've got Thurgosium, you've got Munoz v. Green. It's not the right vehicle. And in Clark, we allowed a lawsuit by an organization and 159 parties challenging application of the Alien Enemies Act. Your Honor, I disagree with that for three reasons. First of all, the procedural right here that the district court derived in its order this morning essentially comes out of a string set of habeas cases. And so the right that the district court has defined here is clearly, to the extent that it exists, a habeas right. No, it's a right to have procedures and opportunity in place, notice and opportunity in place across the board for everyone who's being removed, removed, not detained, removed under the Alien Enemies Act. Your Honor, I think two more responses to that. One is that the right at issue is being derived from habeas. And that's very important because it means that APA jurisdiction isn't available. Here's how this court addressed a very similar case in Lebeau v. Christopher. It said that the key to plaintiff's inability to pursue a suit here is jurisdictional and rests merely on the availability, not the actual seeking of habeas release elsewhere. This court then further went on to explain that, quote, the availability of a habeas remedy in another district ousted us of jurisdiction over the alien's effort to pose a constitutional tax as pending deportation, end quote. And so what I think you have here is the district court found a right derived from habeas cases. And the fact that it sounds like habeas means under Lebeau v. Christopher, it has to be. I'm very confused. I'm very confused because we've got plenty of cases, Supreme Court's got plenty of cases to say when you're not asking for release from custody. Munaf was someone who said, I'm happy to be in the U.S. custody. Please don't release me to Iraqi custody. And that sounds very similar to here. I'm not happy, but they're not disputing the right of the U.S. to detain them. What they are disputing and challenging is the capacity of the U.S. government to release them to Salvadorian jails without any advance notice and due process of whether they even qualify under the proclamation. That's not release. And we have said time and again, and the Supreme Court has told us, which is much more important. That's not habeas. Whether it's right in an immigration context, a war powers context, like the war in Iraq. It's not habeas. And that is addressed through the APA. Your Honor, I disagree with that. I agree that Munaf is an instructive case, but I think it cuts the other way. Here's how the Supreme Court characterized it, and I believe this is how you were characterized as well. Here's the last thing pointed petitioners want, a simple release. They essentially wanted to stay in custody. But nonetheless, I believe it was part two or part three of the Supreme Court decision in Munaf held that habeas was available. And then in part four, it held that that habeas petition failed on the merits. But the first issue presented was whether or not you could bring habeas in such a circumstance. And the answer to that was yes. And so and then the Supreme Court held it again. I'm sorry if I'm saying it right.  I'll hate his petitions in an effort to block their transfer to Iraqi authority, rejecting this use of habeas. They rejected it on the merits, but they didn't say that habeas wasn't available. And I think there is a different case. That actually was a challenge to the procedures. But here it does sound in Cape or in core habeas. And let me explain. It's a procedure. You don't have any procedure, at least other Saturday when the T.R.O. is issued. At the time, the T.R.O. is issued. I'm going to second one, I guess, sort of absorb the first one. The time it issued, there was no procedure in place, no advance notice sufficient to allow anyone to seek habeas. And there was nothing in the proclamation or regulations or processes, formal regulations, but processes adopted by those implementing the proclamation to give any such process. That's the argument. That's the issue. And that was not released. That is that is request for injunctive and declaratory relief. Due to failed procedures. That's been quite a time and again. Do not constitute can not be brought in habeas because you don't want release. Your Honor, I disagree with that on a number of fronts. First of all, again, on page 41 of the Saturday transcript, it's very clear that the basis of the T.R.O. on appeal here was a frontal assault on the president's determination. The various aspect statutory preconditions of the A.A. has been satisfied. But if we don't read it that way, we read it as also being grounded in these claims for a process. And that's why they came in so fast. So we get we get away from those issues. They want. Declaration or injunction against T.R.O. to start with. Declaratory injunctive relief against removal. Your Honor, a failure to adhere to due process. By those implementing the proclamation. Your Honor, I disagree for two reasons. I think, first of all, their complaints still clearly include those facial attacks on the sufficiency of the statutory preconditions. As long as those are in there, those are an attack on the government's ability to exercise a scintilla of custodial authority over the bodies of plaintiffs in order to do either detain them or to remove them. And so as long as those are in the complaints, those sound and core habeas and cannot be brought here and would require transfer to another district or dismissal. But second, I think that the procedural one still challenges fundamentally in core habeas. It says you may not do anything to me under the A.A. until you satisfy these preconditions. You are utterly without power to do so. I mean, that that's that is the same sort of core habeas is asserting that a conviction is wrong because procedural requirements in a trial were not followed. No, I don't think that's the same at all, because people don't go through a trial in this country without getting the gold standard due process. And that was not happening here. I think that's a false equation. The problem here is the problem here is. But they are challenging implementation. The proclamation in a way that never gave anyone a chance to say, I'm not covered. And if your argument is. We didn't have to do that. It's an intrusion on the president's war powers. The courts are paralyzed to do anything. And that's a misreading of precedent. Misreading of the text of the alien enemies. And that can't be an unlawful intrusion on the president's powers. The president has to comply with the Constitution and laws like everybody else. On that, we certainly agree, your honor. I think that what has occurred here is that aside from the shifting injunctions issue is that the, the district court has derived a right from habeas and then use that to create a non derived from. The pre deprivation thing, the right that he found in his morning's order comes entirely out of habeas cases and that's how it has to be served. So, your theory is that they don't get to challenge it until they're in the Salvadorian jail. They don't get a pre deprivation. I don't understand the pre deprivation. They're already in detention. So, if I'm understanding you right, are you saying that they don't have a right until they're removed from the United States and U.S. custody. To challenge this isn't this isn't in the Ken situation. There's nothing like that. They're challenging an immediate removal, not under the immigration and nationality. The without process. Your theory is supposed to do it from the Salvadorian jail after the fact. No, your honor that it's that whatever right that there are sounded habeas much like where the challenge was to a non title eight removal. That sounded in habeas and had to be brought as such and availability of habeas meant that the district court was out of jurisdiction to hear other claims. That same logic means that the heroes issued below are are, you know, invalid and should be reversed or dissolved in court and McNary versus National Refugee Center Reno versus Catholic services said. We don't care about jurisdictional limits on claims that are supposed to go through. Ordinary statutory processes like title title eight. When you are bringing a class wide action for injunctive and declaratory relief about procedural failures. That would seem to fit this case. Your honor, we disagree. I mean, I think to the extent that is procedural. It sounds in habeas and this class does not operate properly procedure an individual can't complain about. This is they needed to do it class wide because people weren't going to have the opportunity to file a suit and bring a procedural one. The individual determination of whether someone's a member of that's a separate question, but for injunctive and declaratory relief that does not seek release from confinement. I'm quite a time again. That's not habeas. Your honor, I disagree. And had they brought this case in district court in Texas, they could have raised it as both and habeas. They instead elected to choose a different court. And that meant that that came with all the jurisdictional limitations of that particular court. That's a venue issue for habeas, not jurisdictional. That doesn't affect the jurisdiction of the district court. That's a venue issue. What do you What do you assume in the custodian? Your honor, it's not subject matter jurisdiction, but it does go to the authority of the court and in the Rumsfeld versus Padilla, the Supreme Court did say it was jurisdictional not in the subject matter jurisdiction, but it's not just a mere venue rule. It cuts to the core authority of the court to grant habeas relief. As long as they can be served with the process. It's a test, right? As long as the defendants can be served with process, then we've got jurisdiction. It's just a venue argument. And an important one, I'm not diminishing that at all, but it's frequently in farce. The venue requirement that you sue the right custodian and that custodian by definition in the district where the person's detained. Your honor, we certainly agree that it's case dispositive. I think it's not venue may undersell how important it is. Supreme Court has characterized it as jurisdictional in the sense that it goes outright to the authority of the court and not merely a sort of steering things to where they might be convenient to be heard. It's something more fundamental than that, but in any event, that probably doesn't matter because I think we're agreeing that if venue is improper or for habeas, like, the court is just simply out of authority to do it. All right, we'll give you a couple minutes to reply. Thank you. Your honor. Mr. Good afternoon. Your honors legal learn from the ACLU for plaintiffs time permitting. I want to address why this court, the courts absolutely have jurisdiction to review whether the statutory predicates to the alien enemies act. Have been met and why they haven't been here. I want to put that aside for the moment and sort of jump into the conversation you've been having with the government. First, I just want to put one thing to bed district court has not said anything yet about whether he intends to try and bring people back or already sent to El Salvador. The district court is a very concerned understandably that his order was violated, but he is trying to get to the bottom of those facts. He has not made a determination of whether his order was violated, much less what he would do as a remedy, whether he would try and order the individuals back. So, I don't think that issue is before this court. I think that's a red herring. The second thing is that I think the government now, and we, and the government have sort of joined issue at a minimum. It seems like the government is grudgingly admitting that after the decade and footnote seventeen in particular, that there must be ability to contest whether you fall within the act. And so now, I think it's a question of how that's gonna go about the proclamation. Yeah, I'm sorry within the proclamation. Yes, within the proclamation. And so the district court has said very clearly he wants to figure out how that would work. He's asked both of us. We either need us, or the government had a clear answer for him at the moment when he asked it the hearing he intends to get to the bottom of it. But I think what it means is that even if this was appealable, and we don't think it is, but even if it was, I think it's easy ground to affirm the is that there was no process and I want to be very clear about two points. One is that the process, to the extent the government says you can have process, that's illusory. People were designated TDA without any advance notice, rushed to planes. We will put into the district court the piece of paper that individuals are getting that specifically says you are not entitled to review. So, there is a lot of factual development left to do in the district court. Judge Boasberg is working extremely hard and extremely quickly, but I think this court would want that factual record. I think that's one of the reasons the TRO is not appealable. This is not. Yes. Could you have done everything in a Texas district court that you did in this district court? Perhaps, Your Honor, but I don't think it was necessary. There's absolutely no question now that the law is that this kind of challenge where you're not seeking release doesn't have to be brought in habeas. It can be brought by APA. It could be brought in habeas, but it doesn't need to be. Well, so I want to get to that in a minute, but I think the common ground that you've just sort of asserted, the government, you said, kind of has begrudgingly given, it's really significant common ground that I think has been lost in some of the briefing and some of the transcripts. You know, you could have filed the exact same complaint that you filed here in Texas district court. The government is not contesting that each plaintiff could have gone before an Article III judge and said, I am not a member of Trinidad and Arabia, so I'm not covered by the proclamation, so I can't be removed, and could have done that. I think you would both agree that the plaintiff could have done that with the habeas petition. I know you push back and say it doesn't have to be a habeas petition, but I think you would agree that everything I just said is true and that it could have been done through a habeas petition. Is that right? Well, Your Honor, I mean, I don't think it's insignificant that it didn't have to be by habeas and that we have to, we can choose our venue, but I want to address your question specifically. We could have filed a class, perhaps a class habeas, if that's what you mean, but we certainly weren't looking just to get our five individuals from being sent to a Salvadoran prison. So this would have had to be a class. If the government is suggesting that we could have gone in there for every individual, absolutely not. We did not know who has been designated. This has all been done in secret. The president signed it. I think you're going beyond what my question was. And I'm not sure the government would agree that you can certify a class in habeas. I would agree with that either. It's that more of an open question that we would need to look into. But on Saturday, early afternoon, you asked the district court to enjoin the removal of the five main plaintiffs. The district court did a Southern District of Texas court could have done that as well. Right? So, yeah, I just want to actually, we filed it at two in the morning, whether it's Friday night or Saturday morning, the district court in the early morning and join the five main plaintiffs. The class class papers had already been filed with the complaint to two in the morning, both complaint for declaratory injunctive relief and habeas with class papers, seeking a TRO for the class. The district court then held a hearing at five PM to decide whether his TRO was going to apply to the whole class absent a class TRO. We would have had far more people sitting in a Salvadoran. But my, my, my question is not about what the district my question for now is not about what the district court did. It's just about whether everything the district court did, which you just described that I was off by a few hours, but it was Saturday. Right? It was a long Saturday. Everything that happened, the district court did a Southern District of Texas district court could have done. Assuming they would do it as a class. Yes. So I think that nicely tees up where the real dispute is, because you're not saying you couldn't have done all this in Texas. And the government is saying, hey, this has to be habeas and habeas has to be in the district where the detainee is detained. And that would be so I know you disagree with both of those things, but I, I think the government, I think there's some common ground. There's common ground now that there has to be process, although I still see the government accepting it grudgingly because this whole pre deprivation thing we were talking about people being sent to El Salvador. The worst, one of the worst prisons in the world in Communicado, they're essentially being disappeared. The president of El Salvador has now said, maybe they're going to spend the rest of their lives there. The government has provided zero ability to bring habeas. It would have had to have been done by a class and to the extent the government's thing going forward will give you process. I have not heard one word about them giving us advance notice. At this point, everyone who's detained can bring you would you say that at this point, everyone who's detained can bring a habeas petition. Because of the TRO by Judge Boasberg only, and that is even assuming and I don't think this is true that everyone has been clearly designated that we know exactly who the government thinks falls under the proclamation. And therefore, if they didn't file a habeas right away, they could be put on a plane. And so I certainly don't think this is the way it would go about with individual habeas. If the TRO were lifted, it wouldn't be a meaningful way to bring habeas. I think the government's going to put people back on a plane immediately just as they did. The whole thing has played out in secret. The president is supposed to make a public proclamation. He signed it on March 14th. It wasn't published till the afternoon of March 15th. People are already being lined up to be brought to planes. So I think we're dealing with something that is illusory. And that's even if we accept that habeas can be brought. We know it can be brought because you brought it. You filed a habeas. It could be brought by habeas, but it doesn't have to be. Let's go to that, whether it has to be. And I think perhaps reasonable people can disagree about this. I think it's hard to get around LaBeau v. Christopher. The district court addressed it today. LaBeau, I may be pronouncing it wrong. Can I just read? Yeah, sure. I'm sorry. It says, of course, the plaintiff's focus is not explicitly on their present custody. That's very similar to this case where you're saying, you know, we're not asking to be let out of detention. We're just saying don't transfer us to one of these other countries. It says, of course, the plaintiff's focus is not explicitly on their present custody. They claim the nature of the relief requested is different here since they have not formally sought a release from custody as in the habeas action. But, the court goes on, we have rejected precisely such efforts to manipulate the preclusive effect of habeas jurisdiction. So I don't, I guess, I think that's a tough precedent for you where LaBeau, as I understand it, was about to be extradited to Canada. Could have filed in Illinois where he was detained. Actually did file a habeas petition there. Filed in D.D.C. and our court said, no, you can't bring this suit in D.D.C. You have to bring a habeas suit in Illinois to challenge, not your detentant, your transfer to Canada. Yeah, Your Honor, a few things about LaBeau that I want to sort of broaden it. LaBeau is an extradition case. The extradition has, for 225 years, had its own case law. But I think the key in LaBeau that the court understood was that they were, in fact, seeking release through their other habeas. And so it seemed a little bit like they were trying to circumvent the habeas. I think that's why it's different. But the case law is voluminous, voluminous, that you don't bring, you don't have to bring a habeas unless it's a core habeas challenge to release. And I just want to touch on Thursingham for a second that Judge Millett brought up. Thursingham, the government, walked into the Supreme Court and said, the only time habeas can be used is when you're seeking release from detention. You can't challenge your removal. That was ultimately what the Supreme Court accepted. That was the holding. That's on top of case after case after case saying, if you're not seeking release, and I want to be 100 percent clear, no class member is seeking release. Judge Bosberg was absolutely clear that his order will not stop anybody from being prosecuted, anybody from being detained, allowing anybody to be released, allowing anybody. I don't know the answer to this question. I tried to ask the government. Maybe they didn't know yet. You may not know either, especially if you haven't talked individually with every one of your class members. But do you know if anyone is currently being detained under the Alien Enemies Act proclamation and not being detained under any other legal grounds? I don't know the answer to that. I suspect that most people, maybe all of them, are being detained on the immigration laws because they were in proceedings. The government is using the act to try and short circuit the immigration proceedings. And so I think what they have done is pull people out of proceedings and put them on the plane to El Salvador. Your original complaint mentioned apprehension and removal. And you wanted to enjoin both. I understand the district court did not take you up, did not accept your invitation to enjoin apprehension. But that does suggest that you were worried there would be some class members currently at large in the country who might be apprehended under this AEA authority. So, Your Honor, I think to the extent that that language is in there, it may be an artful. But we were 100% clear with Judge Boasberg, and he has been 100% clear. We are absolutely not trying to get anybody out of detention, stop anybody's removal, stop anybody's prosecution. And I think that goes to the larger point. This is a very specific statute, a wartime statute dealing with a very specific problem. It does not bar any other authority for prosecuting or removing these individuals, much less have to do with anything about stopping ships in China. Can I ask you about Mudoff v. Guerin? Because I do understand how you can read it to the government here and you can read it to help you here. I think the government is saying the first thing the Supreme Court held there was there is habeas jurisdiction. This is someone who wasn't objecting to being held but was objecting to being transferred. U.S. custody in Iraq to the Iraqi government in Iraq and said don't transfer to the Iraqi government. And the first thing the Supreme Court held was that there is habeas jurisdiction for that because he was an American citizen. And then said in your habeas cause of action, you lose on the merits because we're going to respect the Iraqi, what they said is Iraq's exclusive jurisdiction to punish offenses against the laws committed within its borders. So we have habeas jurisdiction and habeas is your cause of action. But with that cause of action, you lose on the merits because of Iraq's exclusive jurisdiction to punish offenses against laws committed within its borders. And if that's how it's read, it seems like Mudoff is a pretty good precedent for the government saying, look, if you want to challenge your transfer from U.S. custody to another nation's custody, your cause of action is habeas. Well, I think two things about that, Your Honor. One is Mudoff said you could do habeas. It didn't say you must habeas. And I think that's the difference in these core habeas cases. Whether you could bring it in habeas, you often can bring it in habeas. But then whether you must bring it in habeas. So we understand the Chief Justice to be saying in that case, I think it was fairly clear the last thing you want is simple release. And so I think that's why Mudoff doesn't answer the question. And Thurston, of course, in the most recent precedent from the Supreme Court. On the not having to bring it in as habeas, the district court understands your cause of action to be an APA cause of action. I think the government says this is a presidential proclamation. It's different than an agency proclamation. I think last time I was on a panel and you were the attorney, it was an agency proclamation. And you can bring it in. We see every day in this court challenges to agency orders under the APA. But if there's a challenge to a presidential order, the APA is not typically the vehicle for that. And Franklin v. Massachusetts says, at least as a general matter, it can't be. I think what you'll say is, at least on the individualized determinations of whether the class members are part of Tren de Aragua, you're going to use the APA to challenge decisions that are being made by lower level officials. To me, that, if true, just indicates that there's not the type of commonality for a class that you need in order to certify. Right, your Honor, so a couple of things. One is that we cited multiple cases that say even when there's a presidential proclamation, you can challenge its implementation by the agency. But to your common question, our common questions are obviously first whether the AEA can be used at all against a non-foreign government. But the second question is, are they entitled to process? So at some point, if there's individual determinations about whether you fall within the proclamation, those obviously will not be all common. But the initial question that we're fighting with the government about, and they're still, I think, grudgingly only conceding it, is whether they're entitled to some process. They clearly have not been given process, but for this action, I don't think the government would be conceding what it had to concede. What's the status of the habeas petitions in Texas, the ones that have been filed and that are ongoing? Yeah, that's a good question, your Honor. We've been trying at counsel table to find out a little bit about where they are. I think they're generally on hold. There were a few habeas petitions, very few people who happened to sort of guess that maybe their person is going to be designated. But for the vast majority of people, they haven't been designated. I want to also clear up one point of confusion. The government keeps reading from the transcript at page 41 that the judge's initial TRO, I mean, the judge has obviously made clear this morning what his TRO is principally based on. But the judge's hearing transcript on Saturday night was very clear that he was also talking about process. And that's at pages 29 and 30, starting at line 25, your Honor, where he was very specifically talking about process. And footnote 17 in ludicrous said you have to be able to contest whether you fall within the proclamation. Yeah, no, I'm sorry. I want to ask about, I guess this goes to some degree, I think it goes to the irreparable harm the government asserts.  And some degree to maybe larger issues. And so the question I'm going to ask you is going to sound like I have some skepticism about what the district court did on Saturday. I want to preface that by saying we've had a week to look at this issue and it's been hard. And the district court only had a day. And, you know, about a decade ago, one member of this court long before I was on it, talked about district judges having to deal with Guantanamo issues. So they were difficult and intricate and complicated and novel. And he said even when this court might disagree with the district court decision, that disagreement is with respect for the dedicated work of the district court on these matters. That said, I'm wondering if you can point me to a district court PRO or injunction that survived appeal, that stopped an ongoing, partially overseas national security operation in the way that this, at the time at least, did order planes to take foreigners from international waters to the United States. Your Honor, so to start with the order about him bringing people back, potentially bringing people back is not for you. And I think there's a lot of factual development. And I don't know how much this court is aware, but there have been emergency proceedings almost every day. And I think the district court has not been pleased with how the lack of forthcoming, you know, yeah. And so there's this declaration by, it says that he's been in the State Department since 1971, 54 years ago. My math is right. It's quite, that's quite a lot of experience in the State Department. And now he's a career State Department official, head of the Western Hemispheres Affairs Bureau. And he says that this TRO is, quote, harm, harming the foreign policy of the United States. It comes after, quote, intensive and delicate negotiations with El Salvador and the Maduro regime, risks the possibility that those governments will change their minds. It gives them leverage for renegotiation. And he warns, quote, these harms could arise even in the short term. So those concerns are ongoing. I understand that there are no longer planes in the air that are being ordered to return to the United States with foreigners that the executive branch doesn't think should be in the United States. I guess just maybe from a 10,000-foot perspective, can, I thought about when Justice Douglas enjoined the bombing of Cambodia, but it didn't go very well. The Supreme Court reversed him in about six hours. I found a couple other injunctions that are somewhat analogous, but they didn't survive appellate review either. Can you, standing here, give us an example of a district court injunction that enjoined a national security operation, partially overseas, that survived appellate review? Your Honor, I want to push back on the overseas part, because I don't think the order to return the planes is before you. So what we're talking about is not sending people. Foreign policy negotiations with the Maduro regime. Let me address that. I will not stop you from having time to address that, but can you just tell me what's an example of a district court enjoining a national security operation with foreign relations implications? I think we can at least agree on that. So I think, for one thing, I would cite Umeda Dean, the Supreme Court, saying there has to be habeas. I mean, the government could not have argued more strenuously that the court should not interfere and say that they're entitled to habeas father at Guantanamo. But to your point about the national security, I want to return to something that Judge Millett said. The government cannot take the position that it's an interference by this court on national security grounds to give people process. The Supreme Court was 100 percent clear in Ludecky and footnote 17 in multiple cases saying process. So for the government to say you're interfering by giving what Justice Frankfurter said in Ludecky was necessary as a matter of the act. I don't even think he needed due process. He was ruling as a matter of the act. You have to be able to contest. The implications of not giving people a chance to contest it are extraordinary. I mean, every religious and ethnic group in this country has at some point been tagged as associated with a criminal organization. If people can just be picked up and sent. Mr. Glenn, I mean, I have to stop you. You're not getting an argument from this bench so far today against the idea that every single member of this class can have an individualized habeas determination in front of an article three judge to say I'm innocent. And I think I take your point about the Median and your point about Ludecky. But I think it's hard to answer some of our questions without mentioning cases that are habeas cases. Median was habeas. Ludecky was habeas. And so it seems like in order to answer one question in a way that is kind of satisfactory for your position. That's because they were asking for release. But you are asking to stop a transfer. And that is something that habeas has been used for repeatedly. It could be used, but it doesn't have to be used. But I think, Your Honor, I want to return maybe to the very beginning of this appeal. We don't think there's jurisdiction over a TRO. I mean, you just had the decision in Bellinger. That's a very, very rare thing for this court to find that a TRO is appealable. And there are two preconditions. One is that it's a mandatory injunction not preserving the status quo. Judge Boasberg was explicit that he's simply preserving the status quo. And the other thing is that the harm can't be undone. You cited Mr. Kozak's affidavit. That's the last sentence in a two-page affidavit, which says there would be harm, but then he switches to could when he's talking about the short term. And all we're saying is that... Do you think that we as judges don't know everything that the State Department knows? Well, I think there's a reason why he switched from would to could in that sentence when he was talking about the short term. We're here asking that Judge Boasberg be allowed to do his work. And I think counsel for the government repeatedly answered questions to this panel by saying, I don't really know. There's not a factual record yet. On the question of whether this TRO is the type of normal TRO that can't be appealed or the type of unusual TRO that can be appealed, we have this Adams v. Vance case from 1978. It says that you can appeal that TRO, and he called it an intrusion on executive discretion in the field of foreign policy. I know you maybe don't think that's what's going on here, but the government argues that's what's going on here. So it seems like if you lose on the sort of merits of this argument, you should also lose on the is it appealable argument. Well, I think, Your Honor, that Adams was very different because it was a mandatory conjunction telling the Secretary of State what to do. It was very different. It's preserving the status quo. And it was also a fuller affidavit. I understand the claims are not on the air now, but it was not preserving the status quo when the claims were ordered to be turned around. Well, Your Honor, again, I'm not sure I have much more to say on that other than that is about whether a district court's order, a federal judge's order was violated, but he still has not made any determination. So it is not before you. In saying that, keep these people on the ground. Don't let them be removed under the Alien Enemies Act. This is an unprecedented move to use the Alien Enemies Act for only the fourth time in our country's history without a declared war. He's saying preserve the status quo until we can find all the facts. And I think what we're going to show in the district court is that many, if not most of the people removed had no connection to the gang, meaning that the gang does not actually have a formal structure with members. We're going to put in evidence about what happens in a Salvadoran prison that you could remain there for the rest of your life. We're going to put in evidence, hopefully, about what the timing was and who signed it. President Trump has introduced confusion about now whether he actually even signed the proclamation. So all we're saying is that Judge Blisberg is working very hard. You can finish that sentence. He's working very hard and that he has had to move very fast. And I think we're going to move on a preliminary injunction very quickly. And I think for this court to sanction anything about what the government's doing or even to say Judge Blisberg shouldn't have time to figure out what the process is so it's not an illusory ability to contest without a factual record, I think that is probably short-circuiting the way the system should work. I mean, we're really talking about something extraordinary to name a gang rather than a foreign country. This was a wartime measure meant for war. Let me just, in terms of irreparable harm to your clients, in terms of the Salvadoran prison that you just mentioned, all the things that you've just articulated, what's your response to the government's argument? You can maybe do all that, but you've just got to do it in the right court and the right court is in Texas, not here. Yeah, Your Honor, I just want to make, I want to answer that, but I just want to make one other point. The government seemed to be suggesting that this was about pre-deprivation as if there wouldn't be harm if they were in a Salvadoran prison for a few days, but I don't want to hear the government saying if you win that habeas, we'll bring you back from the Salvadoran prison. So it's a little bit of, you know, the question, I'm not sure I have more to say other than there is case after case, starting with the Supreme Court's case decision in Prisor in the 1970s, through Thursingham saying, you do not need to bring a case in habeas unless it's a core habeas, meaning you are seeking release from detention. And Thursingham was as strong as you can be on that. That was a case that I argued and it was unfortunate because we were asking the habeas be expanded, but that's where it's ended up. And that just builds on multiple cases from this court and from the district court saying there's a difference between whether you have to bring it in habeas and whether you could bring it in habeas. And so, but at a minimum, I think Judge Boasberg is going to try and figure that out and decide what process, because if the TRO is lifted now, as Judge Millett pointed out, our people are on a plane. They're just on a plane. And so I think Judge Boasberg has done a good job of saying, here's an easy ground to say, if assuming it's appealable, here's an easy ground to affirm the TRO. Why wouldn't five minutes after the TRO is lifted, why wouldn't your next move be to file a habeas petition in Raymondsville, Texas, where they're being detained? A class action? Well, we don't know that. Your five-name plan. Well, I mean, to begin with, we're looking not to just have our five-name plan. It does not end up in the style of our prison. If you write a habeas class action as possible, you could file a habeas class action. At this point, the government is doing everything in secret. We have no idea if everyone's in Texas. So all of a sudden we see a plane leaving from Arizona, and they say, well, you filed it in Texas. So I don't know if the government's asking us to file in every single district in the country or whether they're going to specifically tell us where people are being designated and give us time to do it. I mean, maybe the strangest place of all to file would be in Washington, D.C., where there's likely not a single person detained under the AEA. Well, the people are being, I mean, I don't want to dwell on this point, but I don't want to dwell on it. People are being moved from every part of the country. So we actually don't know whether people were originally in D.C. because the government's not saying it. We know people... Well, we know there could be in the surrounding areas. But I think the proclamation is coming out of here. The agency heads who are enforcing it are out of here, and I think this is a fairly standard place to bring it. But unless we can't even begin to figure out where to file all our habeas, even assuming class action habeas, who has been designated in every district? Do you know where the five named plaintiffs are held? The five named plaintiffs are in Texas now. They came from all over. I would think they could file a habeas petition in Texas, and you could try to use those five named plaintiffs to represent a nationwide class. And I'm not saying you would get the class certified or you wouldn't get the class certified, but at least the court making that decision would be the right venue for the five named classmen. Yeah, I mean, Your Honor, to begin with, once we're doing that, why Texas versus D.C.? Just because the five named plaintiffs happen to be there at the moment. I mean, Rumsfeld, the D.A. could have argued this.  Well, because those are, yeah. I mean, those are supposed to file habeas where you're detained. Well, only if it's a core habeas. I mean, the immediate custodian rule applies only where you're seeking release because you want to be where the district director is. Your Honor, I may have sort of said that I think there's just too much law now to backtrack on that. There's such a thing as a habeas class action? The Supreme Court has ruled on the merits on habeas class actions, but it's an open question. And so if we went there and only had habeas and they said, for reasons unrelated to this case, we're not going to allow a class action, then I think our people would be back on a plane. And then how many people do you represent right now? Your Honor, I wish I knew. The government will not tell us who they represent because there's more than the five names. Oh, absolutely. It's a class. Every one of those is your client. Yes, absolutely, Your Honor. And so every one of those would need to have you file a habeas action if you can find where they are and what district to do it in. Absolutely. And then going forward, we'd have to know the government has said they're going to continue designating people. And, you know, just to the point of I get that we're not, we're now at a point where the government, where this panel is not saying this is really an extraordinary thing that's happening because people were rushed out, as Judge Boasberg said, and story after story is now coming out that people had nothing to do with the gang. And so I think we're looking at people now who may be in a solitary prison the rest of their lives. And I think that's really the problem. And incommunicado, families can't reach them. There's no way to reach them. And the government wants to continue doing it. And I don't, when Judge Boasberg said, well, how would the process work? And, you know, will there be pre-deprivation? Government didn't answer. And I hear the government also bringing up pre-deprivation again. So I just want to be clear that right now, as this is moving so quickly, I think Judge Boasberg has said at a minimum under Lideki, the implementation of this proclamation cannot stand. And for that reason alone, I think the TRO has to be affirmed. We're going to move on a preliminary injunction. It will be back here, no doubt, from either side on a full record. What are you moving on at the end? We're going to move in a couple of days, Your Honor. And we're trying to just gather as much facts as we can. Family members are seeing the videos, the harsh treatment men received when they got off the plane. They're alerting us. They're alerting us because they think the men have disappeared from U.S. detention facilities and they think they may be in El Salvador. We're also going to put in expert declarations about how the TDA gang works and that there's actually no formal membership. So figuring out who's part of TDA is very, very difficult and a number of other factual developments. I would think this court, if it's going to rule on such an extraordinary issue, only the fourth time in history the act is being used, will want that full record. And just one other question. So Judge Walker has noted the difficult issues about the airplanes and stuff. Right. That sort of mess that was happening on Saturday. The TRO, the written TRO says nothing about that. It just says enjoined from removal. And I know that there's a bit of a kerfuffle in district court about those oral directions and the government's position is those did not bind it. I think your position is that they did. So do we have to, if we were to be concerned about the TRO, at least as applied to directing airline flights out of U.S. airspace, but people still in U.S. custody, do we have to resolve that question of whether the oral language he was using at the hearing was itself part of the TRO? I don't think so, Your Honor, because I understood that the district court to be sort of having two orders. The primary one was about going forward. He wants this enjoined. And the other part was, let's try and stop the harm from occurring, so let's turn the planes around. Now that people are in the Salvadoran prison, the judge recognizes that the first step would have to be was the order violated. The government says it wasn't violated because the planes were out of U.S. airspace and there's a whole contentious thing going on. So I think it's- I thought they said they now agree that they were bound by the oral. I thought they said that they were only bound- They're still pushing back on that as well. I think Judge Boasberg has been fairly clear that he thinks the oral order was just as binding. But I think the question really has not been resolved in the district court. I think Judge Boasberg is first very meticulously going to try and find the facts about whether his order was violated and only then decide if there's a remedy. But he's certainly not going to do anything before he finds the facts. I think it would be premature for this court to get into it because we're talking about the government potentially deliberately violating a federal court's order. And so I think it would be best to allow Judge Boasberg to find those facts. Certainly the government, if he was to order them brought back, could come back up here. But I don't see Judge Boasberg not staying that particular part of his hearing of his order if he ever got to that. Mr. Laird, just a question about the timing of us deciding this stay motion. I know the government wants us to do it quickly. Do you see sort of the fairness of us deciding it fast enough that if the Supreme Court wanted to reverse us, they would have an opportunity before the TRO runs out? Your Honor, but leaving the TRO in place? Well, I'm not saying whether you'd win or lose. I'm sort of asking you behind bail of ignorance. So what I would say is, Your Honor, I do think, especially as long and as eloquently as you argue about your clients' right to be heard in court, I think maybe you would say the government, as a matter of fairness, ought to have a shot at the Supreme Court if they lose here. If that were going to happen and you were going to rule for the government on this, then I would hope that Your Honors would give us time to seek a stay from the Supreme Court without allowing everyone to be put on a plane to El Salvador in the interim. But I would urge this court to allow the district court to just finish its ruling. I'm not going to rule for you. Go ahead. Do you see the benefit of us doing that very quickly so that the government can get to the Supreme Court fast enough? You know, I will leave that to Your Honors, whether you think that... You don't have an objection? I mean, we would prefer that you deny the stay request and send it back to the district court, and I don't think you need to rule quickly. I just want to leave with one point. Rule quickly if we're going to rule against you. Exactly. I just want to leave the court with one point. If the government is going to stand up and reply and admit that under a Supreme Court precedent, people have to have the ability to contest a matter of Supreme Court precedent in Ludecky, the statute, and if you want to throw in due process as well about the implementation, then it's inconceivable to me how they can say this is an intrusion on national security, because they themselves are saying, yes, at least that part of Judge Boasberg's order must stand. And so that certainly can stand until there's a preliminary injunction ruling. But I just don't see how the government could continue using this broad rhetoric about intrusions on national security if they're conceding that Judge Boasberg is right as at least our secondary claim that there must be process, even if he was not willing at this point to rule on whether the Alien Enemies Act can be used at all against a non-foreign government. Thank you. Thank you, Your Honor. Mr. Ensign, why don't you take five minutes? Your Honor, I'll be very brief, very quick points. I believe opposing counsel said expressly that this case could be brought in habeas. Under this court's decision in LaBieu, which I think I mispronounced earlier, that very clearly means that it must be brought in habeas. That is not in a distinguishable context. That was brought by... It involves something that couldn't be brought under the APA at all, extradition. That's not this situation. Your Honor, I think the same... Extradition is its own body of law. It does have its own, but it is the same context of a person using habeas, or in that case, actually using it in a different court. But the fact that habeas was available to challenge a transfer to a foreign country meant that because it was available in habeas, it must be brought in habeas. Long before Munaf versus Green, and Munaf versus Green was also... I mean, the court recognized that there could be habeas and that it could apply to someone in foreign lands held by a multinational force in the middle of a war, but an American citizen would still have the right to bring a habeas, and then just said that you can't get this relief of protecting you against transfer to another government in habeas. That seems to be... And that did not involve... That was detention issues and transfer issues. It wasn't extradition, which is its own body of law and just sort of an act in this context. And there's no APA option there. There's definitely an APA option here that's going to Munaf. Your Honor, I disagree both that Labiew and Munaf involved challenges to attempted transfers to foreign countries. In both cases, the court said... Well, in Labiew, the court said that has to be brought as habeas, and because it could, it could not be brought as non-habeas. And in Munaf, the Supreme Court said that can be brought in habeas. That was the first question presented that the court resolved by answering in the affirmative. And then under Labiew, that means that it must be brought. I mean, talk about interfering with the conduct of a war, but that habeas is available to people in his situation, but it's not... He wasn't seeking a form of relief that habeas could provide, but he was seeking individual merits that this relief of stopping a transfer to another government is not available under habeas. Your Honor, I heard my opposing counsel say to you directly that this could have been brought as habeas. And so I think Labiew means it has to be... No, I think what he said was people could individually, if given notice and time, bring habeas. But does the government agree that they could bring a habeas class action as long as they did it in Texas? I mean, the habeas class action is going to have to be wherever these people are held. Your Honor, I'm not aware of specifically case law barring that. I believe opposing counsel referenced... Does anyone have a position on the existence of habeas class actions? Your Honor, I don't have a definitive position of the government. That was decided on an extremely accelerated timetable before we had an opportunity to file a brief with any legal reason. It's hard to figure out how you'd get past the class criteria because you're going to have to have individualized showings. But if it's allowed, then I guess it's allowed. It seems a difficult question. It seems quite an uncertain question. I mean, Your Honor, it's clear we take the position that they can bring so and that they effectively got such class relief even before their habeas claim was voluntarily dismissed, I believe. And so I guess what I'm trying to figure out is... You're asking this course... You've agreed, I guess they say grudgingly, I'll let you decide your own effort, but you have agreed that these folks are entitled to notice and due process. That's not a violation of the DECI. Your Honor, we've agreed that challenges to individual determinations can be brought in habeas that there's precedents that recognize that, including WDACI, which allowed people to bring certain challenges in habeas. And, you know, I think much of this exchange... Before they're removed? Before... It certainly wasn't WDACI. In this case, this action was filed before they were removed and included habeas claims. Are you agreeing that what they have a right to do is notice and an opportunity? It's not going to be a long opportunity. I'm going to assume not, but a reasonable opportunity, a fair opportunity to seek the type of review that's allowed under the AEA of whether you qualify under a proclamation terms. Do they have a right to do that before they're put on an airplane? Your Honor, I think the answer that this court provided in I.M. is if you bring such a challenge in habeas before you're out of custody, that can be brought... No, that's not my question. My question is... Because the government's in complete control of when these people get put on airplanes or not. So my question is... I mean, if they're lucky enough to bring it, that's one thing. I'm not asking that question. I'm asking, does the government agree that they're entitled to notice that they are being removed based on their status as a member of Trinidad and Tobago under the AEA proclamation, the President's proclamation under the AEA? And an opportunity to challenge that before they are removed from the United States. Your Honor, we don't agree to the notice point. We agree that if you bring habeas, that you can raise such challenges and they can... I don't know how you can bring habeas if you don't have notice. Well, Your Honor, five individuals did here. So, no. They anticipated it. They filed before there was even a proclamation. And so, if we were to rule for you, it sounds to me like if we were to rule for you and vacate the TRO, the government considers itself fully within its rights to pack every member of this class, including the five named plaintiffs, onto an airplane before there's a chance, reasonable time to file habeas petitions. Is that correct? Your Honor, I think as we've discussed right now, there's nothing preventing these five from filing a habeas petition. That's my question. My question, again, is if we were to grant the relief you request, would the government consider itself, consider it necessary to allow time, notice, and time to file a habeas petition before removing people under the proclamation? Or would it, that's A or B, the government's position that it could immediately resume mass removals of these five named plaintiffs and the class members immediately? A or B? If you've got a C, you can tell me a C. Your Honor, I think it's B that we take the position the EAEA does not require such notice, but that certainly in this period, these five plaintiffs could bring their habeas claims right now and are elected not to do so. They could bring it in the correct court and they've identified no obstacles to doing so. There's a whole class before us. You haven't moved to vacate a class certification. I don't want to keep talking about these five people. We've probably got hundreds of people before us and I'm asking about those hundreds, including those five. And as to them, I understand your answer is B, the second we vacate, if we were to do that, people are lined up and put on planes without notice or time to file for habeas. Even though the government agrees that decision, they have a right to have the decision made about whether they even qualify under the proclamation.  if the TRO is dissolved, the government believes there would not be a limitation and that the statute does not require such notice. Does the government have any obligation with a class certified to notify counsel as to where these individuals are that are being removed so they even know which jurisdiction to bring a habeas to them? Your Honor, I don't believe that plaintiffs have sought such relief. I don't think the district court has ordered it. It's not notice. It's not notice. And it seems it's the government here that says you've got to file habeas actions. The whole solution here is habeas actions. Let's all have habeas actions. I'm a bit rich for the government to say we're not going to tell you where they are or where you need to file or give you time to file at all. Well, Your Honor, they certainly know where their own clients are and they're refusing to file a proper court. They don't even know how many are in this class. You can talk about five. That's way more than five. I don't understand why we're just talking about five. That's a point of class action. Your Honor, they could certainly file in habeas. They seem to care about their form. Unless they go to the right jurisdiction. I absolutely agree with that premise, Your Honor. Which is why they need to file in Texas. And the government won't tell them. They know where at least some of them are. And they're affirmatively refusing to bring habeas in those jurisdictions. And there's they've made a choice not to that's supported by an awful lot of precedent. But that's not the point. The point is there's you must know how many more people are in this class. Your Honor, there is a declaration that provides the estimates. I believe it's a CERNA declaration filed on Tuesday or so. I don't recall the specific numbers, but it is in the record. Are we 100? I'm sorry. I looked at my recollection is it's in around 300 or so. 300. Is every one of them in the same jurisdiction in Texas? Your Honor, I don't know that question. They don't even have to file. The other thing I just want to clarify is I'm kind of it seems like you're both crossing over here. The written TRO doesn't say anything about bringing airplanes back. It just says you shall not remove people that are within the class. But it was in its oral direction, which you say was not I've misunderstood the position. My understanding from government's position in district court is that was not a binding order until it was reduced to writing. So when you're asking us to vacate TRO, are you asking us to vacate the written TRO, which is one that you say is legally operative? That is what we are asking this court to stay or dissolve. But certainly I think plaintiffs are taking the position that that incorporates more than what is it within the four corners of its writing. We take a contrary position, but jurisdiction in no way depends on the merits of the Supreme Court as repeatedly explained. Do you want to wind it up? Yes. Just very quickly, Your Honors. On the habeas point, you've heard that it could be brought in habeas. It means it needs to be so. We've also heard from opposing counsel right now that they intend to bring evidence of individual cases. I think that's important for two reasons. It is in severe tension with commonality requirements of a class. They're now getting into very fact-bound characteristics that are inconsistent with class adjudication. And I think it just again underscores how much this is sounding in habeas. My particular circumstances warrant you not exercising custody over me is a classic habeas claim, and it should be brought as such. All right. Thank you. Thank you, Your Honors.
judges: Henderson; Millett; Walker